<div align="right" style="font-style:italic">NEW YORK,<br>October, 1814.<br>GELSTON<br>v.<br>RUSSEL.</div>

---

## GELSTON *against* RUSSEL AND OTHERS.

THIS was an action of assumpsit, tried before the late *chief justice,* at the *Columbia* circuit, in *October,* 1813.

The plaintiff demanded of the defendants three hundred dollars, being the amount of the wages of *Peter Latham,* a black man, as a seaman on board of the vessel of the defendants, and who was the slave of the plaintiff.

It was proved, that in 1798 *Peter* lived with the plaintiff. The sheriff having an execution again *James Latham,* sold all his right and title to *Peter,* at auction, and the plaintiff became the purchaser under the sheriff's sale. *Peter* lived with him some time before and some time after the sale. The father of *James Latham* owned a female slave, the mother of *Peter,* who was born in the family, as a slave, during the revolutionary war; and before *Peter* was born, the father of *James Latham* went into *Canada,* leaving all his property here with his wife and children; and he died in *Canada* about twelve years ago, and subsequent to the sale of *Peter* to the plaintiff. One of his sons, *James Latham,* took the management of his father's estate, after he went to *Canada,* and has ever since acted as the owner of it. There was no other proof of the property of the plaintiff in *Peter.*

The *Chief Justice* asked the plaintiff's counsel, if he expected to prove any actual privity between the plaintiff and defendants, as to the services of *Peter,* by which he recognised him as the slave of the plaintiff; and was answered, that the plaintiff party, (*L.* not having been attainted,) and on his death, passed to his executors, or so that *J.,* his son, had no property in him, which could be sold under an execution.

L., in the revolutionary war, left his property and family in this state, and went to Canada, where he resided until his death, about the year 1801. Among the property of L. left with his family, was a female slave, who had a son born, named P.; and J., the eldest son of L., had the management of his father's estate, after he went away. In 1798 the sheriff, under an execution against the goods of J., sold all the right and title of J. to P. at public auction, to G. the purchaser, who took possession of P., and claimed his services as a slave. It was held that P., following the condition of his mother, was the slave of L., and continued his property administrators.

NEW YORK, October, 1814.

GELSTON
v.
RUSSELL.

would prove that after the services were performed by *Peter*, and before the money due for his wages was paid over, he gave notice to the defendants that he claimed *Peter* as his slave, and forbade the defendants paying the money to him.

His honour, thereupon, directed the plaintiff to be nonsuited, for want of sufficient evidence of his being the slave of the plaintiff.

A motion was made to set aside the nonsuit, and for a new trial.

*James Strong*, for the plaintiff. By the law of this state, slaves are regarded as goods and chattels.[*] Property in a slave may be acquired by a *bona fide* purchase, without deed.[†] A written transfer is not requisite. It appears that *Peter* was in the possession of the plaintiff; that he bought him of the sheriff, who sold him as the property of *James Latham*. The plaintiff was a *bona fide* purchaser; and such a purchaser at a sheriff's sale may hold the property purchased against all the world, unless it was stolen.[‡]

The plaintiff proved that *Peter* was born a slave ; that he purchased him at a sheriff's sale ; that he was in his possession, which amounts, at least, to *prima facie* evidence of property, and is sufficient against the defendants, until they show that *Peter* was a freeman.

The proof was sufficient to be left to the jury as evidence of title.

*E. Williams*, contra. The only question is, whether the plaintiff was the owner of this person or slave, so as to entitle him to claim the compensation for his services. *Peter* first lived with the plaintiff, confessedly, not as a slave. The sheriff then sold all the right and title of *James Latham* to this man, and the plaintiff became the purchaser. But what evidence is there that *Peter* ever was the property of *James Latham ?* If he ever was a slave, he belonged to *James Latham's* father, who died in *Canada*, subsequent to the sheriff's sale. *James Latham* was not the executor or administrator of his father's estate ; and how does it appear that he ever acquired any property in the slave ? The circumstance that his father abandoned his property, and went to *Canada*, might, perhaps, be regarded as a virtual manumission of the mother of *Peter* ; but *James*

[*] *Sable v. Hitchcock*, 2 Johns. Cases, 79. 85. 87. *Walden v. Payne*, 2 Wash. Rep. 7.

[†] 1 *Dallas*, 169.

[‡] *Wilbraham v. Snow*, 2 Saund. 47.

*Latham* could have no claim to him, except as an executor or administrator of his father.

YATES, J. delivered the opinion of the court. The question in this case is, whether the evidence is sufficient to establish the plaintiff's property in the slave.

The mother of *Peter* was the slave of the father of *James Latham*. By the statute, (sess. 11. c. 40. s. 2.) he followed, from his birth, the state and condition of his mother; and, consequently, he was the slave of *Latham*, the father of *James*; unless, after going to *Canada* during the revolution, the master has been attainted of adhering to the enemies of the country, which would operate as a lawful manumission of the slave. (*Laws of New-York*, sess. 9. c. 58. s. 29.) But such attainder and conviction, if any, has not been shown. In 1798, the time when *Peter* was sold by the deputy sheriff, it appears *Latham*, the father of *James*, was living, and resided in *Canada*; and he then continued to be the owner. The abandonment of his family and property could not devest him of his right to the slave; and the mere possession could not create such an interest in *James Latham*, his son, as to subject the slave to be seized and sold for the payment of his debts. The plaintiff, *Gelston*, having only purchased the right and title of *James Latham* from the deputy sheriff, he cannot, now, under that sale, establish his claim to him, as his slave, who, if not a freeman altogether, must be considered as part of the estate of *Latham*, the owner of the slave's mother, and subject to the disposition and control of his executors and administrators, in the same manner as the other personal property of the deceased, unless otherwise directed by will. The plaintiff having no claim to the services of *Peter*, the nonsuit was properly granted by the judge; and the motion to set it aside must be denied.

Motion denied.